**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Ray Baughman, Cecil McDole, and
Tyler Stimbert,

        Plaintiffs,

v.

Roadrunner Communications, LLC, et.
al.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. CV-12-565-PHX-SMM

**MEMORANDUM OF DECISION
AND ORDER**

Before the Court is Plaintiffs' motion pursuant to Fed. R. Civ. P. 23 for class action certification of their third claim submitted in their Collective Action and Class Action Complaint. (Doc. 189.) Plaintiffs' third claim is a state law claim for failure to pay timely wages. (Id.) The matter is fully briefed (Docs. 189, 196, 200), and the Court heard oral argument on the motion (Doc. 206).

The Court will deny Plaintiffs' motion to certify Claim 3, failure to pay timely wages pursuant to Arizona Revised Statutes §§ 23-351 to 23-353. The Court finds that Claim 3 does not satisfy the commonality prerequisite and therefore is not appropriate for class wide treatment.

## BACKGROUND

*Factual History*

Defendant Roadrunner Communications ("Roadrunner") is an Arizona limited liability company that provides satellite television installation and repair services for

1   DirectTV.  (Doc. 30 at 3.)   As additional Defendants Plaintiffs individually name Brian

2   Rambo and wife, Hobie Dufort and wife, and Lonnie Densberger and wife, who are alleged

3   to be member-managers of Roadrunner.  (Doc. 1 at 4-6.)  Roadrunner operates five locations

4   in Arizona, along with providing services in California and New Mexico.  (Id.)

5          Plaintiffs, which the parties refer to as "Technicians" or "Contractor" signed

6   Independent Contractor Agreements ("ICAs") to work for Roadrunner providing installation

7   and repair services for DirecTV.  (Doc. 196 at 2, referencing the ICA contract, Doc. 196-3.)

8   The ICA expressly provides:

9          Contractor is an independent contractor of the Company. Nothing in this
           [Independent Contractor] Agreement shall be construed as creating an
10         employer-employee relationship, as a guarantee of future employment or
           engagement, or as a limitation upon the Company's sole discretion to terminate
11         this Agreement at any time without cause.  Contractor further agrees to be
           responsible for all of Contractor's federal and state taxes, withholding, social
12         security, insurance, and other benefits; At the Company's request, the
           Contractor shall provide the Company with satisfactory proof of independent
13         contractor status . . .

14   (Id. at 5.)  Compensation for the Plaintiffs under the ICA provided:

15         Contractor's pay will be determined by the job as reflected on each completed
           work order. The Company will provide a price sheet outlining the Contractor's
16         pay for each piece of work completed. The Contractor understands that he is
           responsible to provide all tools and equipment necessary for completion of the
17         installation work with the exception of the DirecTV equipment provided by
           DTV Home Services II, LLC. Contractor further understands that he will not
18         be reimbursed for any business expenses nor will be receiving any benefits
           from the Company including, but not limited to, income tax withholding,
19         social security, or Medicare contributions. The Company will provide a
           1099-MISC as an informational report to the IRS reflecting what the
20         Contractor has been paid by the Company at the end of the tax year.

21   (Id. at 3.)

22          Plaintiffs allege that Technicians typically began their workdays by arriving at

23   Roadrunner's office, completing paperwork, returning equipment related to the previous

24   day's work, and receiving their daily work schedules from one of Roadrunner's lead

25   supervisors. (Doc. 1 at 6.)  After obtaining their schedules Plaintiffs were allegedly sent off

26   to the locations of the assigned installation or repair, after which they proceeded in a

27   proscribed order to the next assignment.  (Id.)  Plaintiffs allege that they were required to

28   purchase and were not compensated for materials necessary for the completion of the jobs

and which became the property of Defendants' customers after installation.  (Id.)

Plaintiffs were subject to charge-backs, but it is in dispute how often and when a charge-back was applied to a Technician's pay.  (Doc. 30 at 5.)  Plaintiffs allege that all Technicians had reductions in their paychecks due to chargebacks.  (Doc. 1 at 6-8.) Examples of charge backs include:

> Failed Quality Control charge back (or "QC charge back"), which Defendants assess if Defendants' lead technician determines that a task had not been performed up to his subjective standard. The charge back may be as large as the entire per-task fee, as determined in Defendants' sole discretion.
>
> Non-responding box charge back (or "NRB charge back"), which Defendants assess if less than a certain percentage of a Technician's installed satellite receiver boxes during a particular time frame are not connected to a telephone line or the internet. Each customer, and not the Technician, decides how many receiver boxes to connect to a telephone line or the internet; therefore, a Technician's percentage of "non-responding boxes" is not within his control.
>
> Sin 7 charge back, which Defendants assess if, within seven days of an installation, a customer calls DirecTV support for any reason.
>
> Sin 30 and Sin 90 charge back, which Defendants assess if, within 8 to 90 days of an installation, a customer calls DirecTV support for any reason. The amount of the charge back varies depending on the time elapsed from installation or repair.
>
> Replace fittings charge back, which Defendants assess for all service coded "replace fittings" on a Technician's installation.
>
> "Where's my Tech" charge back, which Defendants assess if DirecTV is unable to provide a customer with a Technician's estimated arrival time.
>
>  "On Time Guarantee" charge back, which Defendants assess if a Technician is late for a repair or installation appointment and the customer calls DirecTV to complain.

(Doc. 1 at 7-8.)

*Procedural History*

Plaintiffs', Ray Baughman, Cecil McDole, Tyler Stimbert, Johnny Gonzalez, Richard Axford and Dennis Baldwin (collectively "Plaintiffs") brought a Collective Action and Class Action Complaint alleging four claims: failure to pay overtime wage compensation in violation of the Fair Labor Standards Act ("FLSA"); violations of Arizona's minimum wage act; failure to timely pay wages in violation of Arizona wage statutes; and unjust enrichment. (Doc. 1 at 13-15.)  Previously, the Court granted Plaintiffs' request to conditionally certify

Claim 1 for collective action pursuant to Section 216(b) of the FLSA alleging failure to pay overtime wages. (Doc. 64.)  Plaintiffs elected not to pursue class certification of Claim 2 (Doc. 189 at 1) and summary judgment was granted regarding Claim 4 in favor of Defendants (Docs. 211, 214).  Thus, Plaintiffs' motion for Rule 23 class action certification only concerns Claim 3, their Arizona state law claim that Defendants failed to pay timely wages.  (Id.)  Plaintiffs define the class as follows:

> All persons who worked as satellite television installation and repair technicians for Defendant Roadrunner Communications, LLC, at any facility in Arizona at any time between March 16, 2011, and the date on which the Court grants Rule 23 class certification, who were classified as independent contractors and who claim that they were (i) assessed charge backs against their compensation and (ii) were required to purchase, at their own expense, materials that were necessary to complete satellite television installations and repairs.

(Id. at 7.)

## STANDARD OF REVIEW

Class actions are governed by Fed. R. Civ. P. 23.  Rule 23 "give[s] the district court broad discretion over certification of class actions[.]"  Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1019 (9th Cir. 2011). Class certification remains " 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' " Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013) (quoting Califano v. Yamasaki, 442 U.S. 682, 700–701 (1979)).  "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  See Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011).

Rule 23 sets forth the requirements for class action certification.  Its elements are not merely a pleading standard to be met.  Dukes, 131 S. Ct. at 2551.  According to Rule 23(a), the party seeking class certification must affirmatively set forth facts sufficient to satisfy the following four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a); see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997).  *Numerosity* requires a class "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). *Commonality* requires "questions of law

or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The purpose of the rigorous commonality standard is to require that class members' claims depend upon a common contention whose truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.  See Dukes, 131 S. Ct. at 2551 (stating further that what matters is not the raising of common questions but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation); see also id. at 2552 (stating that "without some glue holding [the rationale for the alleged violation] together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question" of whether there was a violation); Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp., 917 F.2d 1171, 1175 (9th Cir. 1990) (stating that commonality ensures that claims of individual class members share a common core of facts "sufficiently parallel to insure a vigorous and full presentation of all claims for relief"). *Typicality* ensures that the "claims or defenses of the representative parties are typical of the claims or defenses of the class" as a whole. Fed. R. Civ. P. 23(a)(3). Finally, *adequacy of representation* is necessary to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requires the Court to determine if: (1) the named plaintiffs and their counsel have any conflict of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

In addition to meeting the conditions imposed by Rule 23(a), the party seeking class certification must satisfy through evidentiary proof at least one of the provisions of Rule 23(b).  See Comcast, 133 S. Ct. at 1432.  Here, Plaintiff moves for class certification pursuant to Rule 23(b)(3), which  requires that the Court find (1) that "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The *predominance* inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (citation and internal

1    quotation omitted). "This analysis presumes that the existence of common issues of fact or
2    law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone
3    is not sufficient to fulfill Rule 23(b)(3)." Id.; see also Comcast, 133 S. Ct. at 1432 (reiterating
4    that "[i]f anything, Rule 23(b)(3)'s predominance criterion is even more demanding than
5    Rule 23(a)"). "When common questions present a significant aspect of the case and they can
6    be resolved for all members of the class in a single adjudication, there is clear justification
7    for handling the dispute on a representative rather than on an individual basis." Hanlon, 150
8    F.3d at 1022.  However, under Comcast, it is the court's duty to take a close look at whether
9    common questions predominate over individual ones.  133 S. Ct. at 1432.  The *superiority*
10   *inquiry* "requires determination of whether the objectives of the particular class action
11   procedure will be achieved in the particular case." Hanlon, 150 F.3d at 1023 (further citation
12   omitted). "This determination necessarily involves a comparative evaluation of alternative
13   mechanisms of dispute resolution." Id.

14        Although a district court has broad discretion to certify a class, the court must
15   undertake a "rigorous analysis" to ensure that the prerequisites of Rule 23 have been satisfied
16   and that class certification is appropriate.  See Dukes, 131 S. Ct. at 2551; Hanon v.
17   Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992). The rigorous analysis that must be
18   undertaken regarding class certification frequently involves overlap with the merits of the
19   plaintiff's underlying claim.  See General Telephone Co. of Southwest v. Falcon, 457 U.S.
20   147, 160 (1982) (stating that "the class determination generally involves considerations that
21   are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.").

22                                       **DISCUSSION**

23        Earlier, the Court certified Claim 1 for collective action–Plaintiffs' FLSA claim for
24   overtime compensation.  (Doc. 64.)  A threshold issue in Claim 1 will be whether, under
25   federal law, Plaintiffs were properly designated as independent contractors or whether they
26   were misclassified and actually were Defendants' employees. (Id.) Pursuant to Ninth Circuit
27   precedent, the Court has also ruled that Plaintiffs may properly include in their Complaint
28   both state law class action allegations and federal FLSA collective action allegations.  (See

1   Doc. 207, citing <u>Busk v. Integrity Staffing Solutions, Inc.</u>, 713 F.3d 525 (9th Cir. 2013), <u>cert.</u>
2   <u>granted on separate issue</u>, 134 S. Ct. 1490 (2014).)  Thus, the Court is now ready to rule on
3   Plaintiffs' motion for class certification.  The Court evaluates the prerequisites for class
4   action certification pursuant to Federal Rule of Civil Procedure 23.  As part and parcel of that
5   Rule 23 discussion, the Court will first consider Rule 23(a), the prerequisites for maintaining
6   a class action.  If Rule 23(a)'s prerequisites are satisfied, then the Court will analyze
7   Plaintiffs' showing under Rule 23(b), as to whether the alleged state law violations in Claim
8   3 are appropriate for class treatment.

9           A.      *Rule 23(a)(1)–Numerosity*

10          As indicated, the Court has already conditionally certified Claim 1 as a collective
11   action under the FLSA.  In conjunction with conditional certification, Defendants provided
12   Plaintiffs with contact information for 350 putative class members.  (Doc. 142 at 1-3.)
13   Plaintiffs argue that a putative class size of 350 members satisfies numerosity.

14          Defendants contend that numerosity is not satisfied because Plaintiffs by inviting the
15   entire putative Rule 23 class to join this case by way of the FLSA Notice, show that joinder
16   of all of the class members is by definition not impracticable. (Doc. 196 at 6.)  Defendants
17   argue that if Plaintiffs can mail notices to all of the putative class members, it is not
18   necessarily impracticable to manage those claims on an individual basis.  (<u>Id.</u>)

19          According to Plaintiffs' Class Action Complaint, five of Defendant Roadrunner's
20   offices are in Arizona, and approximately 66 Technicians work at these five Arizona
21   locations. (Doc. 1 at 3.) As of January 2013, Plaintiffs state that 63 Technicians, including
22   the three named Plaintiffs, have opted-in to the collective action. (Doc. 142 at 3.)  Plaintiffs
23   seek to represent only the Technicians located in Defendant Roadrunner's Arizona offices.
24   (Doc. 189 at 7.)  The Court previously commented on numerosity in its Order denying
25   Defendants' motion to strike Arizona state law Rule 23 class allegations.  (Doc. 207.)  While
26   not deciding whether Plaintiffs satisfied numerosity, the Court did find that "Plaintiffs class
27   allegations should not be struck due to Defendants' arguments that Plaintiffs lack
28   numerosity." (<u>Id.</u> at 3.)

1   The Court's focus regarding numerosity is whether joinder of all potential plaintiffs

2   would be impracticable. Rule 23(a)(1). Numerosity requires examination of the facts of each

3   case and does not impose any absolute limitation. Gen. Tel. Co. of the NW., Inc. v. Equal

4   Employment Opportunity Comm'n, 446 U.S. 318, 330 (1980). While no absolute limits exist,

5   the Supreme Court has suggested that a class of 15 members is too small to meet the

6   numerosity requirement. Harik v. Cal. Teachers Ass'n, 326 F.3d 1042, 1051 (9th Cir. 2003)

7   (citing Gen. Tel., 446 U.S. at 330).  Similarly, 40 or more members has been found to satisfy

8   the numerosity requirement.  See Horton v. USAA Cas. Ins. Co., 266 F.R.D. 360, 365 (D.

9   Ariz. 2009).

10   The Court is satisfied that the proposed putative class includes hundreds of persons

11   and that joinder of them would be impracticable. Id. (stating that the numerosity requirement

12   is met so long as general knowledge and common sense indicate that joinder would be

13   impracticable).

14   *B.   Commonality*

15   The Supreme Court indicates that the purpose of the rigorous commonality standard

16   is to require that class members' claims depend upon a common contention whose truth or

17   falsity will resolve an issue that is central to the validity of each one of the claims in one

18   stroke. See Dukes, 131 S. Ct. at 2551 (finding that what matters is not the raising of common

19   questions but rather the capacity of a classwide proceeding to generate common answers apt

20   to drive the resolution of the litigation); see also id. at 2552 (stating that "without some glue

21   holding [the rationale for the alleged violation] together, it will be impossible to say that

22   examination of all the class members' claims for relief will produce a common answer to the

23   crucial question" of whether there was a violation); In re Hydrogen Peroxide Antitrust Litig.,

24   552 F.3d 305, 311 (3d Cir. 2008) ("If proof of the essential elements of the cause of action

25   requires individual treatment, then class certification is unsuitable")

26   *Claim 3*

27   In addressing Claim 3, failure to pay timely wages in violation of A.R.S. §§ 23-351

28   thru 23-353, both parties acknowledge that these Arizona statutes only apply to employees.

1   (Doc. 189 at 11, Doc. 196 at 8.)  The parties thus request that the Court first resolve their
2   status as a threshold issue, whether the putative class members are Arizona employees or
3   independent contractors.  (Id.)

4           The Court, as a matter of federal law under the FLSA, will resolve in subsequent
5   proceedings whether Plaintiffs and those who opted into the collective action are Defendants'
6   employees or independent contractors.   However, the legal standard for determining
7   misclassification is different when applying Arizona law as compared to federal law under
8   the FLSA.  Cf. Real v. Driscoll Strawberry Assoc., Inc., 603 F.2d 748, 754 (9th Cir. 1979)
9   with Santiago v. Phoenix Newspapers, Inc., 164 Ariz. 505, 509, 794 P.2d 138, 142 (1990).
10  The Court need not analyze the potential consequences resulting from varying state and
11  federal standards, and may avoid any possible conflicting results because even when the
12  Court assumes that the putative class members are employees, Claim 3 lacks commonality.

13          The Court's factual background identifies the varieties of charge backs that resulted
14  in Defendants withholding monies from putative class members' paychecks.  (See Doc. 1 at
15  7-8.)   Plaintiffs ask the Court to consider on a class-wide basis whether Defendants
16  improperly deducted charge backs from the paychecks of putative class members and
17  therefore violated Arizona wage laws, specifically A.R.S. § 23-352(3).[1]   In a nutshell,
18  Plaintiffs ask the Court to evaluate all of the charge backs assessed against putative class
19  members over the time period at issue in the proposed class definition and determine whether
20  the action taken by Roadrunner violated Arizona law.

21          In support, Plaintiffs argue that Roadrunner assessed charge backs against the putative
22  class members' paychecks and that the assessed charge backs "constitute unlawful
23  withholdings from Technicians' wages under Arizona law." (Doc. 189 at 10.) Plaintiffs rely
24  on Hanlon for the proposition that to satisfy commonality, "the existence of shared legal

---

26          [1] A.R.S. § 23-352(3) (2011) states that "[n]o employer may withhold or divert any
27  portion of an employee's wages unless . . . [t]here is a reasonable good faith dispute as to the
    amount of wages due including the amount of any counterclaim or any claim of debt,
28  reimbursement, recoupment or set-off asserted by the employer against the employee."

1   issues with divergent factual predicates is sufficient, as is a common core of salient facts
2   coupled with disparate legal remedies within the claim." (Id., citing 150 F.3d at 1019.)
3   Plaintiffs also cite Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp., 917 F.2d 1171,
4   1175 (9th Cir. 1990), in support of commonality. (Doc. 189 at 10.)

5       Roadrunner contends that commonality is not satisfied; it is not the raising of common
6   questions but rather the capacity of a class-wide proceeding to generate common answers.
7   (Doc. 196 at 7.) To satisfy commonality, Roadrunner contends that there needs to be a
8   common feature that will resolve the validity of Plaintiffs' claims in one stroke. (Id.) In
9   Roadrunner's view, Plaintiffs have not shown that there are common facts that prove or
10  disprove whether they improperly assessed charge backs/deductions from the putative class
11  member's paycheck. (Id. at 8.) Roadrunner asserts that the Court cannot fashion a remedy,
12  a single stroke, that would validly apply across the class. (Id.)

13      Plaintiffs reply that the need to determine damages on an individual basis does not
14  defeat Rule 23 commonality. (Doc. 200 at 1, citing cases in support.)

15      The Court disagrees with Plaintiffs that there is commonality in Claim 3. The Court
16  cannot fashion a remedy, a single stroke, that would validly apply across the class. Although
17  Plaintiffs assert that the individual differences only relate to damages, the Court disagrees.
18  In this case of 300 putative class members, all of which have been assessed charge backs, the
19  Court must individually assess the factual basis of each charge back in order to determine its
20  validity pursuant to Defendants' policies and procedures. Next, the Court then must further
21  determine whether any assessed charge back violated A.R.S. § 23-352. The legal standard
22  under A.R.S. § 23-352 is whether an employer withheld a employee wage payment because
23  of a good faith dispute. See Schade v. Diethrich, 158 Ariz. 1, 13-14, 760 P.2d 1050, 1062-63
24  (1988). A decision under § 23-352 includes both the necessary findings of fact and
25  conclusions of law. See id.

26      The Court finds that based on the validity of the variety of individual charge backs
27  assessed against the putative class, and in application, whether they violated A.R.S. § 23-352,
28  it is clear that the putative class members' claims do not depend upon a common contention

1    whose truth or falsity will resolve an issue that is central to the validity of each one of the
2    claims in one stroke.  See Dukes, 131 S. Ct. at 2551.  The Court finds that so many
3    dissimilarities within the putative class impedes the generation of common answers.
4    Therefore, Claim 3 does not satisfy the commonality prerequisite and is not amenable to class
5    treatment.

6        The cases cited by Plaintiffs in support of commonality for Claim 3 are not to the
7    contrary.  For instance, in Hanlon, "[a]lthough members of the proposed class [possessed]
8    different avenues of redress, their claims stem[ed] from the same source: the allegedly
9    defective designed rear liftgate latch installed in minivans manufactured by Chrysler between
10   1984 and 1995. . . . The narrow focus of the proposed class was to obtain a defect-free rear
11   liftgate latch in Chrysler minivans owned by class members, or receive adequate
12   non-personal injury compensatory damages."  Id. at 1019-20.  Therefore, in Hanlon, there
13   was a common contention whose truth or falsity would resolve an issue central to the validity
14   of each one of the claims in one stroke–the allegedly defective designed rear liftgate.
15   Similarly, in Cal. Rural Legal Assistance, Inc., the common contention was whether the
16   district court properly construed a statute and regulation that was at issue for the putative
17   class members, the one stroke that resolved an issue central to the validity of their claim.  See
18   917 F.2d at 1175.  The same cannot be said about Claim 3, and the validity of the
19   chargebacks both from a Roadrunner policy standpoint and pursuant to the applicable
20   Arizona statute.

21       Thus, the Court finds that Claim 3 does not satisfy Rule 23(a)(2)'s commonality
22   prerequisite and therefore it is not appropriate for class wide treatment.  Because the Court
23   has found that Claim 3 does not satisfy commonality, Claim 3 necessarily does not satisfy
24   Rule 23(b)(3), which  requires that the Court find (1) that "questions of law or fact common
25   to class members predominate over any questions affecting only individual members."
26   Rather, it is individual issues–the factual and legal validity of each charge back–that
27   predominates Claim 3.  Based on Claim 3's failure to satisfy Rule 23(a)(2)'s commonality
28   prerequisite and the (b)(3) predominance requirement, it is not necessary for the Court to

1  analyze the other class action prerequisites.  Claim 3 is not appropriate for class treatment.

2  **CONCLUSION**

3  On the basis of the foregoing,

4  **IT IS HEREBY ORDERED** denying Plaintiffs' motion to certify class under Fed.

5  R. Civ. P. 23.  (Doc. 189.)

6  **IT IS FURTHER ORDERED** denying Plaintiffs' motion for ruling as moot.  (Doc.

7  211.)

8  DATED this 29th day of August, 2014.

9

10

11  Stephen M. McNamee

Senior United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28